

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Charley Lockhart
State Treasurer
Austin, Texas

Dear Sir:

                              Opinion No. O-3451
                              Re: Constitutionality of House
                                  Bill No. 514.

          We are in receipt of your letter of July 7, 1941,
in which you request the opinion of this department on
the questions set out therein as follows:

          "Attached hereto, please find copy of
     House Bill No. 514 passed by the House of Rep-
     resentatives April 24, 1941, (yeas 132, nays
     0), passed by the Senate May 21, 1941, (viva
     voce), and filed unsigned by the Governor, in
     the office of the Secretary of State June 7,
     1941.

          "Due to the importance of this legislation,
     we respectfully request your opinion as to whether
     the Act is constitutional. We wish to call your
     attention to the fact that Senate Bill No. 97,
     passed by the 47th Legislature prior to the pas-
     sage of the Act in question, was not included
     in the caption of the bill.

          "We also ask, if in your opinion the Act
     is constitutional, what date the Act will be-
     come effective. This request is made because
     there was no record made of the vote in the
     Senate."

House Bill No. 514 reads as follows:

          "AN ACT repealing Section 9 of Article IV
     of Chapter 495 of the Acts of the Third Called
     Session of the Forty-fourth Legislature, as
     amended by Senate Bill No. 24, Chapter 5, Acts

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

of the Forty-sixth Legislature; and declaring an emergency. _____

"BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

"Section 1. That Section 9 of Article IV of Chapter 495 of the Acts of the Third Called Session of the Forty-fourth Legislature, as amended by Senate Bill No. 24, Chapter 5, Acts of the Forty-sixth Legislature, and all subsequent amendments thereto, be and the same is hereby repealed.

"Sec. 2. The fact that the existing law discriminates against various state banking, mortgages and loan companies creates an emergency and an imperative public necessity that the Constitutional Rule requiring bills to be read in each House on three several days be suspended, and the same is hereby suspended, and this Act shall take effect and be in force from and after its passage and it is so enacted."

Section 9 of Article IV of Chapter 495 of the Acts of the Third Called Session of the Forty-fourth Legislature, was the original Act levying a tax on secured notes and obligations. Said Act was amended by the Forty-sixth Legislature by Senate Bill No. 24, Chapter 5. This 1939 amendment by the Forty-sixth Legislature provided in part as follows:

"Section 1. Section 9 of Article IV of Chapter 495 of the Acts of the Third Called Session of the Forty-fourth Legislature, be and the same is hereby amended so as to read hereafter as follows:"

In other words, the 1939 amendment was in itself the complete stamp tax on secured notes and obligations as amended at that time.

The stamp tax on secured notes and obligations was amended by the Forty-seventh Legislature by Senate Bill No. 97. Said bill provides in part as follows:

"Section 1. That Section 9 of Article IV
of Chapter 495 of the Acts of the Third Called
Session of the Forty-fourth Legislature, as amend-
ed by Senate Bill No. 24, Chapter 5, Acts of the
Forty-sixth Legislature, be and the same is here-
by amended so as to hereafter read as follows:"

Senate Bill No. 97, supra, was and is of itself
a complete act placing a tax on secured notes and obliga-
tions. The bill contains an emergency clause and was passed
in the House on February 12th by a vote of 126 to 3 and was
passed in the Senate on February 13th by a vote of 31 to 0.
The bill was filed without the Governor's signature in the
Secretary of State's office on February 26, 1941.

House Bill No. 514, supra, was passed by the House
of Representatives on April 24, 1941, and passed by the
Senate on May 21, 1941. It was filed unsigned by the Gov-
ernor in the office of the Secretary of State on June 7, 1941.

The problem in construing House Bill No. 514 arises
because of the fact that Senate Bill No. 97, supra, had be-
come effective prior to the time that said House Bill No. 514,
supra, had been passed by the Legislature. While Section 1
of House Bill No. 514 provides that "Section 9 of Article IV
of Chapter 495 of the Acts of the Third Called Session of
the Forty-fourth Legislature, as amended by Senate Bill No.
24, Chapter 5, Acts of the Forty-sixth Legislature, and all
subsequent amendments thereto be and the same is hereby re-
pealed," it will be noted that the caption to House Bill No.
514 is not as broad or comprehensive as Section 1 of the
bill. The caption of House Bill No. 514 reads as follows:

"An Act repealing Section 9 of Article IV
of Chapter 495 of the Acts of the Third Called
Session of the Forty-fourth Legislature, as amend-
ed by Senate Bill No. 24, Chapter 5, Acts of the
Forty-sixth Legislature; and declaring an emer-
gency."

The above quoted caption fails to take into account
or mention Senate Bill No. 97, supra, passed by the same
Legislature that passed said House Bill No. 514. As Senate
Bill No. 97, supra, is in itself a comprehensive and complete

Honorable Charley Lockhart, Page 4

tax statute, the question arises as to whether or not the same has been repealed by House Bill No. 514. Apparently the Legislature recognized that said Senate Bill No. 97 was an amendment to Section 9 of Article IV of Chapter 495 of the Acts of the Third Called Session of the Forty-fourth Legislature, because in Section 1 of House Bill No. 514 the Legislature repealed said Section 9 of Article IV of Chapter 495 of the Acts of the Third Called Session of the Forty-fourth Legislature, as amended by Senate Bill No. 24, Chapter 5, Acts of the Forty-sixth Legislature, and also included all subsequent amendments thereto. However, the caption of said House Bill No. 514 repeals Section 9 of Article IV of Chapter 495 of the Acts of the Third Called Session of the Forty-fourth Legislature and also refers to the amendment by Senate Bill No. 24, Chapter 5, Acts of the Forty-sixth Legislature, but makes no mention of any subsequent amendment nor does it specifically mention Senate Bill No. 97 of the Acts of the Forty-seventh Legislature.

Section 35 of Article III of the Constitution of Texas reads as follows:

"No bill,(except general appropriation bills, which may embrace the various subjects and accounts, for and on account of which moneys are appropriated) shall contain more than one subject, which shall be expressed in its title. But if any subject shall be embraced in an act, which shall not be expressed in the title, such act shall be void only as to so much thereof, as shall not be so expressed."

While we have numerous decisions of the courts of this State construing Section 35 of Article III we are unable to find any case in which the legislative omission in the caption was the same as that which was made in House Bill No. 514. Generally the courts are very liberal in holding a caption broad enough to cover the provisions of an act as passed. Also the cases all state the general proposition that the object of the title or caption of an act is to apprise the Legislature of the full contents of the act itself.

The most analogous situation that we are able to find to the one presenting itself here is the one in

190

the case of Landrum v. Centennial Rural High School District No. 2, 134 S. W. (2d) 353, by the Austin Court of Civil Appeals, writ of error dismissed, correct judgment, by the Supreme Court of Texas. The contention in that case was stated as follows:

"The election was ordered by the trustees of the said district, and was held, the returns canvassed, the results declared and certified in accordance with the law governing bond elections held in independent school districts. Appellants, the contestants, contend that the Act of November 3, 1937, being Chap. 40, Acts 45th Leg., Second Called Session, p. 1923, Art. 2922L, R.S. 1925, Vernon's Ann. Civ. St. art. 2922L, provides that the bond election shall be held as in common school districts; and that the county judge must order the election and the Commissioners' Court must canvass the returns and declare the results. The trial court held that said Act of November 3, 1937, was unconstitutional and void because of a defective caption; and further held that the Acts of 1927, 40th Leg., First Called Session, p. 206 (Art. 2922L, appearing in R. S. of 1925, as amended by Acts of 1927), provide that the election should be held in accordance with the law governing bond elections in independent school districts. We sustain the action of the trial court.

"The rural high school act was first passed in 1925, c. 59; and Sec. 12 was placed in the R. S. of 1925 as Art. 2922L and provides that rural high school districts may vote bonds in accordance with the laws governing common school districts. By the 1927 amendment, most of the provisions of the Acts of 1925 were amended; and Art. 2922L, appearing in R. S. of 1925, was amended so as to provide that bond elections in rural high school districts should be held in accordance with the laws governing independent shhool districts. Then came the Act of 1937, supra, which in bold type was entitled: 'Forbidding Appointment Of Tax Officials In School Districts In Certain Counties.' And the entire caption read as follows:

"'An Act amending Section 12 of Chapter 59, of the Acts of the Thirty-ninth Legislature, so as to provide that in certain counties having a population according to the last preceding Federal Census of not less than eight thousand, five hundred (8,500) and not more than eight thousand, seven hundred (8,700) rural high school districts formed by the grouping of common school districts shall not have the authority to appoint a tax assessor, board of equalization, nor tax collector; and declaring an emergency.'"

In that case it may be noted that the caption of the 1937 amendment made no reference to the 1927 amendment but referred only to the 1925 Act. The court held as follows:

"Since the title or caption of the 1937 Act declared that the legislature intended to amend Sec. 12 of the 1925 Act so as to prohibit special tax assessors, equalization boards, and tax collectors in certain counties, it cannot affect counties not included, and is invalid as not embracing subject in its title, so far as the body of the Act changed the method of holding school bond elections from the method prescribed in the 1927 Act. No rule is better established than the one that where a title or caption of an Act specifies the particular field of the amendment, and that it is to cover or state a particular purpose to make a change in a prior statute, the amendment is limited to the making of the specific change designated in its title, and precludes any additional, contrary, or different amendment than that stated in the title, Rutledge v. Atkinson, Tex. Civ. App., 101 S. W. 2d 376; Walker v. State, 134 Tex. Cr. R. 500, 116 S. W. 2d 1076; Sutherland v. Board of Trustees, Tex. Civ. App., 261 S. W. 489." (Underscoring ours)

We call particular attention to that portion of the court's holding in which the court states that no rule is better established than the one that where a title or a caption of an act specifies the particular field of the amendment and that it is to cover or state a particular purpose

Honorable Charley Lockhart, Page 7

to make a change in a prior statute the amendment is limited to the making of the specific change designated in its title and precludes any additional contrary or different amendment than that so stated in the title. Applying that rule to the case at hand the title of House Bill 514 attempts to repeal Section 9 of Article IV of Chapter 495 of the Acts of the Third Called Session of the Forty-fourth Legislature as the same is amended by Senate Bill No. 24, Chapter 3, Acts of the Forty-sixth Legislature. But said caption makes no attempt to repeal the amendment of said Act contained in Senate Bill No. 97, Acts of the Forty-seventh Legislature. We are unable to conclude from the facts and circumstances that some of the members of the Legislature may not have voted for House Bill No. 514 believing it to repeal only the old stamp tax on secured notes and obligations and believing it not to affect the new one as passed by the same Legislature in said Senate Bill No. 97 which was not mentioned in the caption.

In considering the effect of House Bill No. 514 upon Senate Bill No. 97 we are limited to a consideration of the title to House Bill No. 514 under the above rule of law that the body of a bill may not be any broader than its title.

In Sutherland Statutory Construction, 2nd Ed., Vol. I, p. 574, is stated the following:

"An amendment to a section or statute is not necessarily repealed by a repeal of the section or statute amended."

In the case of State v. Young, 9 S. E. 355, the Supreme Court of South Carolina had under consideration the following facts:

"In 1768 the colonial legislature passed 'An act for ascertaining and regulating the rates of wharfage of ships and merchandise, etc., in Charleston.' It contained 12 sections, but the first was exclusively devoted to the subject of wharfage and storage, (and had a long schedule of rates and commodities attached.) 4 St. 286. In 1778 was passed 'An act for amending an act, (giving title of the above act, 1768,) and for repealing the first section of said act.' It covered the whole field of wharfage, and had

attached another and different schedule of articles and rates, and then, in regular form, repealed the first section of the act of 1768. 4 St. 435. In 1807 was passed another 'Act to amend an act entitled "An act for amending an act entitled 'An act for (title of act 1768)'"' This act provided 'that, immediately from and after the passing of this act, the following rates and sums, respectively, shall be paid, and no greater shall be demanded or exacted by owners of wharves, or any other persons, for wharfage of ships or vessels, or for landing,' etc., to-wit: 'For shipping every bale or case of cotton, four cents per bale or case,' etc. 7 St. 183. It expressly repeals so much of said act of 1778 and any other acts as are repugnant to the provisions of the act of 1807. It was to go into effect 'from and after its passage,' and its provisions took the place of an original enactment, certainly as to the important item of cotton, which appears in this act for the first time; showing, probably, that previously that article had not attained the importance of being a staple commodity of the state. This is the act which has been on the statute book as a subsisting law for nearly a century, and was not mentioned in the schedule of the General Statutes. In 1872 the 'Revision and Consolidation' of the General Statutes were adopted, which arranged many acts by their titles in a schedule, under the heading: 'The following entitled acts, ordinances, and resolves, passed in the several years hereinafter enumerated, have expired, or have been, or are hereby, expressly repealed.' etc. The title of the acts of 1768 and 1778 are found in this 'schedule,' and are therefore claimed to have been thereby directly repealed. The act of 1807, however, does not appear in the 'schedule', but it is claimed that that also was indirectly repealed; that its title declared that it was an 'amendment' of the mother act of 1768, and, when the last-named act was repealed, that of 1807, one of its 'amendments,' and therefore 'ingrafted' into it, fell with it. . . ."

The court held as follows:

"But it is earnestly insisted that, if
there was no implied repeal here, there was
an indirect repeal, based on the doctrine
that the repeal of an act necessarily carries
with it all 'amendments' made to said act, and
that therefore the act of 1807, being, as stated
in its title, an 'amendment' of the act of 1768,
fell with the latter act when it was repealed.
We know of no inexorable rule of law which per-
emptorily requires that every act which is en-
titled as 'an amendment' to a former act must
therefore be carried back, and 'ingrafted' upon
that act, so as to become part and parcel of it,
for all purposes. . . .

". . .We think that the act of 1807, al-
though entitled as 'an amendment to an amend-
ment,' was in its provisions affirmative and
original. It was upon an important subject,
which the legislature, in accordance with its
duty, always claimed the right to control. It
has stood upon the statute book as the existing
law, unchallenged for nearly a century, and we
do not see anything in the law which requires
the court to declare that it has been repealed,
either intentionally or by implication, or in-
directly by the operation of a fixed Procrustean
rule, as to the effect of amendments, leaving
the whole subject absolutely 'derelict,' as to
any legislative regulation or control. We think
the act is of force, and that makes it unnec-
essary to consider the other exceptions."

It is the opinion of this department that Senate
Bill No. 97 has not been repealed by House Bill No. 514 and,
as said Senate Bill No. 97 is a comprehensive and complete
tax in itself, the stamp tax on secured notes and obligations
contained therein is not repealed by House Bill No. 514.

APPROVED AUG 7, 1941

FIRST ASSISTANT
ATTORNEY GENERAL

BG:LE

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Billy Goldberg
Billy Goldberg
Assistant

APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN